1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7

8

9

10

11

| | | |
|---|---|---|
| MICHAEL G. CAINE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. C09-450-JCC-BAT |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL ASTRUE, Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

12    Plaintiff Michael G. Caine seeks judicial review of the denial of his application for

13 disability insurance benefits and supplemental security income by the Commissioner of the Social

14 Security Administration.  Dkt. 5.  Caine argues that the ALJ erred by:  (1) finding that Caine had

15 the severe impairments of chronic right shoulder pain and "rule out" Asperger's syndrome; (2)

16 evaluating the "B" criteria absent any medical opinions about those criteria; (3) evaluating the lay

17 witness testimony of Mary Higdon, Caine's wife; (4) evaluating Caine's testimony; and (5)

18 evaluating the medical opinions of Andrew Friedman, M.D., Michael Soung, M.D., and Evan

19 Cantini, M.D.  Caine further argues that the case should be remanded to resolve inconsistencies in

20 the report of Steven Goodman, M.D.  Dkt. 17 at 1-2.  For the reasons set forth below, the Court

21 recommends that this case be **REVERSED** and **REMANDED** for further administrative

22 proceedings.

23 ///

REPORT AND RECOMMENDATION – 1

# I.  FACTUAL AND PROCEDURAL HISTORY

Caine is currently 42 years old and has a high school education.  Tr. 489.  He has worked as a technical support representative and as a fast food worker.  Tr. 112.  On July 12, 2005, Caine applied for disability insurance benefits and supplemental security income, alleging disability as of October 2, 2002.  Tr. 78-80, 81-86.  His applications were denied initially and on reconsideration.  Tr. 34-37, 40-43.  The ALJ held a hearing on October 13, 2006 and issued a decision on February 22, 2007, finding Caine not disabled. Tr. 335-49.  Caine sought review, and the Appeals Counsel remanded the case for further proceedings.  Tr. 350-52.  After holding a second hearing on May 13, 2008, the ALJ issued a decision on August 29, 2008, again finding plaintiff not disabled.  Tr. 12-30.  The Appeals Council denied review of the August 2008 decision, making it the Commissioner's final decision under 42 U.S.C. § 405(g).  Tr. 7-9.

# II.  THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process[1] for determining whether a claimant is disabled.  At step one, the ALJ found that Caine has not engaged in substantial gainful activity since October 2, 2002, the alleged onset date.  Tr. 17.

At step two, the ALJ found that Caine has the severe impairments of chronic right shoulder pain and the mental impairment of rule out Asperger's syndrome.  *Id.*

At step three, the ALJ found that Caine does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.[2]  Tr. 18.

Before proceeding to step four, the ALJ found that Caine has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b).  Tr. 20.

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920.

[2] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION – 2

Specifically, the ALJ found that Caine can carry 20 pounds occasionally and 10 pounds frequently and can sit, stand, or walk for two hours at a time and for a total of eight hours in an eight-hour workday.  He cannot work at unprotected heights.  He may occasionally climb ladders and scaffolds, be exposed to machinery, and reach overhead with the dominant right arm.  He may frequently reach to the front and side.  He may continuously handle, feel, push, and pull, with no limitation on the use of right and left arms together.  Caine is restricted to simple, repetitive tasks, although he should be able to perform detailed, complex, multi-step tasks.  He is limited to superficial face-to-face interaction with the public, coworkers, and supervisors, with other means of communication, such as the telephone, internet, and email, being preferred.  He is limited to minimal communication with the public and occasional communication with coworkers.

At step four, the ALJ found that Caine is unable to perform any past relevant work.  Tr. 28.

At step five, the ALJ found that, considering Caine's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  Tr. 29.  The ALJ accordingly found that plaintiff was not disabled from October 2, 2002, through the date of the decision.  *Id.*

### III.  STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence.  42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that

might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that the Court must uphold.  *Id.*

## IV.  DISCUSSION

**A.     Caine's medically determinable severe impairments**

Caine first argues that the ALJ erred in finding that Caine has the severe impairments of chronic right shoulder pain and rule out Asperger's syndrome.  Dkt. 17 at 4.  With respect to his shoulder impairment, Caine contends that the ALJ should have identified a specific impairment, namely thoracic outlet syndrome.  With respect to his mental impairment, Caine contends the ALJ should not have qualified his finding that Caine has Asperger's syndrome with the phrase "rule out."

At step two, a claimant must make a threshold showing that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c).  An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1508.  An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c), 404.1521(a).  The step-two inquiry is "a *de minimis* screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290.  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that

has no more than a minimal effect on an individual's ability to work.  *Id.*

1.    *Shoulder impairment*

With respect to Caine's shoulder impairment, the ALJ found:

The medical record shows the claimant to have an extended, complicated, and contradictory history of right shoulder symptoms, with multiple evaluations, assessments, treatment, medications, and therapies.  Multiple diagnoses have been provided, but the sole constant has been the overall consensus that complaints of pain have been significantly disproportionate to all objective findings.  Multiple treatment modalities have been employed, with a uniform lack of success.

Tr. 18.  The ALJ concluded, however, that Caine's shoulder impairment is "accompanied by findings and limitations sufficient to satisfy the definition of a severe impairment."  *Id.*

Caine argues that the ALJ's finding that "the sole constant has been the overall consensus that complaints of pain have been significantly disproportionate to all objective findings" is not supported by substantial evidence.  Dkt. 17 at 6.  Caine concedes that prior to September 2006, multiple physicians opined that he had exaggerated pain response and pain behavior.[3]  But he asserts that after David Cassius, M.D., diagnosed thoracic outlet syndrome, there were "no further concerns in this regard."  *Id.* at 7-8.

Dr. Cassius first examined Caine in September 2006 and diagnosed thoracic outlet syndrome that month.  Tr. 328-31.  In an undated letter received by Caine's counsel in November

---

[3] For example, in September 2005, treating physician Thomas Williamson-Kirkland, M.D., diagnosed chronic right shoulder pain that acted more like rotator cuff tendonitis and noted "Excessive and dramatic pain behaviors by history," and "Excessive disability behavior for this mild diagnosis."  Tr. 301.  Dr. Williamson-Kirkland opined "At this point, I have no reason to think that this man has any serious disease in his shoulder.  He does not look or act like this.  He does, however, have excessive pain behavior and that is usually a result of other stressors."  Tr. 302.  Also in September 2005, treating physician David Belfie, M.D., noted that Caine "has a very exaggerated pain response to any active motions that are requested by the surgeon.  With forward elevation, internal and external rotation, he has a dramatic response where he grimaces in pain and throws his body around the examination table.  This is clearly quite bizarre."  Tr. 303.  In February 2006, treating physician Julie Hodapp, M.D., noted:  "Chronic right shoulder pain with a history of small posterior labral tear.  Having pain out of proportion to what would be expected, poor response to rehabilitative interventions."  Tr. 264-65.

REPORT AND RECOMMENDATION – 5

2006, Dr. Cassius stated that vascular ultrasound showed the presence of thoracic outlet syndrome and clinical examination showed cervical and thoracic central sensitization and myofascial trigger points throughout the shoulder girdle.  Tr. 333-34.  Dr. Cassius opined that Caine's "pain complaints are real, and his diagnoses and physical examination are quite consistent with the nature and distribution of his pain complaints."  *Id.*  He opined that Caine's issues were "not insurmountable."  *Id.*

But, contrary to Caine's assertions, Dr. Cassius's diagnosis did not resolve either the diagnosis of Caine's shoulder impairment or the concerns about Caine's exaggerated pain complaints.  For example, in June 2007, treating psychologist David Fordyce, Ph. D., noted:

> There are several moments of very unusual pain behaviors observed during the session that includes sharp flinches, grimaces, occasional barely vocal exclamations, and some shifts in posture.  Verbal reports of pain and related disability are frequent and dramatic.  At other times, he looks extremely comfortable, pleasant, and throughout the entire interview does not seem to be in any emotional distress.

Tr. 407.

In May 2007, treating physician Andrew Friedman, M.D., who treated Caine both before and after Dr. Cassius's treatment and was aware of Dr. Cassius's diagnosis, assessed Caine as having "Chronic right shoulder pain of uncertain etiology."  Tr. 412.  In June 2007, Dr. Friedman stated that while Caine and his wife "seem to understand and readily accept the notion that [Caine's pain] is an aberrant signal, they are less inclined to believe that psychological forces can modify its intensity."  Tr. 404.  In July 2007, Dr. Friedman observed:  "Pain behavior is intermittent with screaming out occasionally."  Tr. 401.  In a September 2007 letter to Caine's counsel, Dr. Friedman stated that Caine's primary complaint was very severe chronic right shoulder pain.  Tr. 473.  He stated that an orthopedic surgeon had found a small labral tear in Caine's shoulder, but the main issue was Caine's ability to deal with his discomfort without

REPORT AND RECOMMENDATION – 6

extreme distraction.  Dr. Friedman opined that "the combination of personality factors and chronic pain when taken together [are] the reason for his disability."  *Id.*  In January 2008, Dr. Friedman noted that Caine "does not shout as he had done previously," but opined that Caine's right shoulder pain "does not have an anatomic approach that is going to be I think much benefit for him."  Tr. 456.

In March 2008, examining physician Steven Goodman, M.D., diagnosed "Right scapular and shoulder girdle myofascial pain syndrome, examination unimpressive for radiculopathy, thoracic outlet syndrome, carpal tunnel syndrome, or cubital tunnel syndrome."  Tr. 446.  These assessments, along with the assessments made prior to September 2006, provide substantial evidence to support the ALJ's finding that Caine's doctors consistently found him to have pain complaints disproportionate to the objective findings.

Plaintiff apparently believes that, because Dr. Cassius provided a diagnosis and opined that this diagnosis explained Caine's pain, the ALJ should ignore all other evaluations and diagnoses. But the ALJ must consider all the evidence in the record when evaluating disability.  20 C.F.R § 404.1520(a)(3).  Moreover, a diagnosis alone is not sufficient to establish the existence of an impairment.  In this case, Dr. Cassius diagnosed thoracic outlet syndrome, while other doctors provided different, conflicting diagnoses.  Dr. Cassius's diagnosis is certainly important in considering Caine's shoulder impairment, but it does not by itself establish any single impairment or trump other doctors' diagnoses.  The ALJ considered all the evidence of Caine's shoulder impairment and, finding it contradictory but sufficient to establish a severe impairment, found that Caine had the severe impairment of chronic right shoulder pain and proceeded to consider Caine's shoulder impairment through the remainder of the evaluation process.

The Court declines to disturb the ALJ's analysis.  However, because the Court recommends

1  that this case be remanded for further proceedings, the Court recommends that the ALJ should

2  consider whether it is appropriate to further clarify the nature of Caine's shoulder impairment,

3  particularly in light of any additional evidence submitted on remand.

4     2.      *Asperger's syndrome*

5     With respect the ALJ's finding that Caine had the mental impairment of "rule out"

6  Asperger's syndrome, the ALJ found:

7     Asperger's syndrome with associated aberrant sensitivities to various forms of
      stimulation, is a diagnosis proposed by the claimant and spouse based on their
8     internet research, and is a concept that has been adopted by treating sources as
      being compatible with cognitive and interpersonal differences that are present.
9     While a possibly logical conclusion, this diagnosis has not been formally made.

10 Tr. 18.  As with Caine's shoulder impairment, the ALJ concluded that Asperger's syndrome is

11 "accompanied by findings and limitations sufficient to satisfy the definition of a severe

12 impairment."  *Id.*

13    Caine argues that the ALJ erred by finding that Caine had the mental impairment of "rule

14 out" Asperger's syndrome, rather than finding that he conclusively had Asperger's syndrome.

15 Dkt. 17 at 10.  He asserts that the ALJ's finding that the diagnosis had not been formally made is

16 erroneous because psychologist Kristoffer Rhoads, Ph.D., diagnosed Caine with Asperger's

17 syndrome.

18    As with Caine's shoulder impairment, the issue of his mental impairment involves some

19 uncertainty.  In his June 2007 evaluation, Dr. Fordyce noted that Caine and his wife had "discussed

20 the possibility of something like Asperger's syndrome and associated aberrant sensitivities to

21 various forms of stimulation."  Tr. 408.  He assessed Caine as "a gentleman whose pain experience

22 sits within the context of some larger psychologic or psychiatric impairment.  There may be some

23 elements of Asperger's syndrome suggested, but also a somewhat schizoid lifestyle and perhaps

REPORT AND RECOMMENDATION – 8

some generalized social anxiety?" *Id.*

In July 2007, Dr. Friedman noted that management of Caine's pain was "made more difficult by probable underlying Asperger's syndrome as well as family dynamic issues." Tr. 401. In his September 2007 letter to Caine's counsel, Dr. Friedman stated, "We have discussed at length the reasons behind his inability to cope with his chronic pain and it comes out in our discussions that he very likely has some form of [autistic] spectrum disorder such as Asperger's syndrome." Tr. 473. In January 2008, Dr. Friedman stated, "His main issues are shoulder pain, but then there are some behavioral issues that we have put into the autism/Asperger's spectrum and it is not until June apparently that he can have an appointment with an Asperger's specialist." Tr. 456.

In January 2008, Dr. Rhoads evaluated Caine and opined that Caine "appears to meet criteria for Asperger's disorder and will be worked by an independent provider in July for this." Tr. 459. Dr. Rhoads believed that Caine had "significant signs of Asperger's disorder and other developmental abnormalities that will diminish his treatment response and overall coping ability. He currently appears to meet criteria for Asperger's disorder, and this will complicate his progress and treatment." Tr. 461. Dr. Rhoads listed Asperger's disorder as his Axis I diagnosis for Caine. *Id.*

When evaluating Caine's mental impairment, the ALJ was once again faced with ambiguity. Dr. Fordyce and Dr. Friedman believed it was likely that Caine had Asperger's syndrome, but did not actually diagnose that impairment, instead believing it was more appropriate for a specialist to evaluate Caine. Dr. Rhoads listed Asperger's disorder as a diagnosis, but in his narrative assessment, he stated that it "appears" that Caine met the criteria Asperger's disorder. Dr. Rhoads also referred to the need for an evaluation by a specialist.[4] When the entire content of

---

[4] Caine testified that this evaluation was scheduled for July 23, 2008. Tr. 456, 459. The ALJ

1   his report is considered, Dr. Rhoads' diagnosis appears to be tentative at best.

2   The ALJ considered all of this evidence and found it sufficient to establish the severe

3   mental impairment of Asperger's disorder.  The ALJ's finding that Caine had "rule out"

4   Asperger's reflects the uncertainty of the diagnosis.  But her explanation for this finding shows

5   that she accepted that Caine had the severe impairment of Asperger's syndrome.  The ALJ

6   proceeded to evaluate Caine's mental impairment through the remainder of the evaluation process.

7   Once again, the Court declines to disturb the ALJ's analysis.  However, the Court again

8   recommends that on remand the ALJ should consider whether it is appropriate to further clarify the

9   nature of Caine's mental impairment.

10  **B.      The ALJ's evaluation of the listing criteria**

11  Caine argues that the ALJ erred at step three by failing to explain her rating of the

12  functional limitations caused by Caine's mental impairment.  He further argues that the ALJ

13  should have obtained an updated medical expert opinion on Caine's limitations and that the case

14  should be remanded to obtain this evidence.  Dkt. 17 at 12-13.

15  At step three, the ALJ must determine whether a claimant's impairments meet or equal a

16  listed impairment.  20 C.F.R. §§ 404.1520(a), 416.920(a).  The listings describe specific

17  impairments that are considered "severe enough to prevent an individual from doing any gainful

18  activity regardless of his or her age, education, or work experience."  20 C.F.R. §§ 404.1525(a),

19  416.925(a).  A claimant whose impairments meet or equal a listing is presumptively disabled.  20

20  C.F.R. §§ 404.1520(a), 416.920(a).

21  Once an ALJ has determined that a claimant has a medically determinable severe mental

22  impairment, the ALJ must rate the degree of functional limitation resulting from the impairment

23  noted that she had received no information as to the results of this evaluation or whether it had
    been conducted.  Tr. 26.

REPORT AND RECOMMENDATION – 10

1    (the "paragraph B" criteria).  20 C.F.R. § 404.1520a(b)(2).  The ALJ assesses a claimant's

2    limitations in activities of daily living; social functioning; concentration, persistence, and pace; and

3    episodes of decompensation.  20 C.F.R. § 404.1520a(b)(3).  To meet or equal listing 12.10, autistic

4    disorder and other pervasive developmental disorders, a claimant must have at least two of the

5    following B criteria: marked restriction in activities of daily living; marked difficulties in

6    maintaining social functioning; marked difficulties in maintaining concentration, persistence, and

7    pace; or repeated episodes of decompensation, each of extended duration.  20 C.F.R. pt. 404,

8    subpt. P, app. 1, § 12.10.  The ALJ must adequately explain her evaluation of the effects of the

9    impairments.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The ALJ does this by

10   discussing and evaluating the evidence that supports her conclusion.  *See Lewis v. Apfel*, 236 F.3d

11   503, 513 (9th Cir. 2001).

12          The ALJ is ultimately responsible for deciding the legal question of whether a claimant's

13   impairments meet or equal a listing.  *See* 20 C.F.R. §§ 404.1526(e), 416.926(e).  In making this

14   decision, the ALJ must consider all the evidence in the case record.  20 C.F.R. § 404.1526(c).  The

15   ALJ must also consider the opinion given by one or more medical or psychological consultants

16   designated by the Commissioner.  *Id.*  Such consultants include consultants hired by the state

17   agency authorized to make disability determinations.  20 C.F.R. § 404.1526(d).  As explained in

18   Social Security Ruling ("SSR") 96-6p, "longstanding policy requires that the judgment of a

19   physician (or psychologist) designated by the Commissioner on the issues of equivalence on the

20   evidence before the administrative law judge or the Appeals Council must be received into the

21   record as expert opinion evidence and given appropriate weight."  If additional medical evidence is

22   received, the ALJ must obtain an updated opinion from a medical expert when that evidence "in

23   the opinion of the administrative law judge or the Appeals Council may change the State agency

1   medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to

2   any impairment in the Listing of Impairments."  SSR 96-6p.[5]

3            In considering whether Caine's mental impairment met or equaled a listing, the ALJ

4   considered Dr. Rhoads' evaluation, discussed above, and the December 2005 consultative

5   evaluation of William Kelly, M.D.  Tr. 19, 239-42.  Dr. Kelly found no psychiatric diagnosis and

6   assigned Caine a global assessment of functioning score of 70, indicating some mild symptoms or

7   some difficulty in social, occupational, or school functioning.  Tr. 241; *see* Am. Psychiatric Ass'n,

8   Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 1994).  Dr. Kelly opined that

9   from a psychiatric perspective, Caine should be able to complete a normal workday or workweek

10  without interruptions, perform detailed and complex tasks on a consistent basis, maintain regular

11  and attendance in the workplace, and deal with the usual stress encountered in a competitive

12  workplace.  Tr. 242.

13           Although not referred to by the ALJ at step three, the state agency medical consultant in

14  January 2006 reviewed Dr. Kelly's report and the other medical evidence and found that Caine had

15  no medically determinable mental impairment.  Tr. 243.  Accordingly, the medical consultant did

16  not opine as to Caine's functional limitations.  On reconsideration, another state agency medical

17  consultant in April 2006 affirmed the prior finding of no medically determinable mental

18  impairment and again made no evaluation of Caine's functional limitations.  Tr. 321.

19           The ALJ found that a mental impairment appeared to be present, but it did not meet or

20  medically equal the criteria of listing 12.10.  With respect to the B criteria, the ALJ found that

21  Caine had mild restriction in activities of daily living; moderate difficulties in maintaining social

22  functioning; and mild to moderate difficulties in maintaining concentration, persistence, and pace.

23  _____

[5] Although SSRs lack the force of regulations, they are binding on all components of the Social
Security Administration.  20 C.F.R. § 402.35(b)(1).

REPORT AND RECOMMENDATION – 12

1   She found no evidence of episodes of decompensation.  The ALJ thus found that the paragraph B

2   criteria were not satisfied.  Tr. 19.

3          Caine's argument that the ALJ failed to properly explain her assessment of Caine's

4   functional limitations fails.  The ALJ discussed and evaluated the evidence she considered to

5   support her conclusion, Dr. Rhoads' and Dr. Kelly's evaluations.  This was an adequate

6   explanation of the ALJ's assessment of Caine's functional limitations.  *See Lewis*, 236 F.3d at 513.

7          What is problematic, however, is that in making this assessment, the ALJ considered no

8   state agency medical consultant opinion on the issue of whether Caine's mental impairment met or

9   equaled a listing.  Consideration of such an opinion is required by 20 C.F.R. § 404.1526(c).  Dr.

10  Kelly evaluated Caine and the state agency consultants in this case reviewed the record in 2005

11  and 2006, before there was any medical evidence of Asperger's syndrome.  As noted above, Caine

12  submitted additional medical evidence of his mental impairment beginning in at least 2007.  The

13  ALJ considered this additional medical evidence and found that Caine had a medically

14  determinable mental impairment.  Dr. Kelly's and the state agency consultants' opinions were thus

15  not based "on the evidence before the administrative law judge."  SSR 96-6p.  In addition, because

16  the state agency consultant opined that Caine had no medically determinable mental impairment,

17  the ALJ did not comply with the Social Security Administration's "longstanding policy" to admit

18  and give appropriate weight to a state agency consultant opinion on the issue of equivalency.  *Id.*

19         The Court recognizes that the ALJ has broad discretion in determining whether to call a

20  medical expert to testify.  SSR 96-6p requires the ALJ to obtain an updated medical expert opinion

21  if, in the ALJ's opinion, additional medical evidence may change the state agency consultant's

22  finding on equivalence.  That is clearly the situation in this case, where the state agency consultant

23  had no finding on equivalence.  The ALJ should obtain an updated medical expert opinion in order

REPORT AND RECOMMENDATION – 13

1   to meet her obligation of fully and fairly developing the administrative record.  *See Brown v.*

2   *Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

3          The Court finds that substantial evidence does not support the ALJ's finding that Caine did

4   not have an impairment that met or equaled a listing.  The Court declines to determine based on the

5   record whether Caine's mental impairment, alone or in combination with his shoulder impairment,

6   meets or equals a listing.  Rather, the Court recommends that this case be remanded with directions

7   to obtain and consider an updated medical opinion regarding whether, based on all the evidence in

8   the record, Caine's severe impairments, alone or in combination, meet or equal a listed

9   impairment.

10  **C.    The ALJ's residual functional capacity analysis**

11         Caine assigns several errors to the ALJ's residual functional capacity analysis.  Because the

12  Court recommends that this case be reversed and remanded for further proceedings, the Court will

13  address these issues.

14         *1.    Lay witness evidence*

15         Caine argues that the ALJ erred in evaluating the lay witness evidence of his wife, Mary

16  Higdon.  Dkt. 17 at 13.  Lay testimony as to a claimant's symptoms is competent evidence that the

17  ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and

18  gives reasons germane to each witness for doing do.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.

19  2001).  The ALJ's reasons for disregarding lay witness testimony must be specific.  *See Stout v.*

20  *Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

21         Ms. Higdon completed a third party function report form in November 2005.[6]  She reported

22  that she and Caine conduct most errands of grocery shopping and medical appointments together;

23  _____
    [6] Ms. Higdon reported that she was Caine's "friend/fiancée" at the time.  Tr. 143.  They have since married.

REPORT AND RECOMMENDATION – 14

Caine spends most of his day in front of the computer, which allows him to remain seated and support his arm; Caine provides some care for his child, prepares simple meals, has difficulty with household chores, and has reduced socialization and recreation; Caine experiences pain with any activity that aggravates his shoulder; and Caine frequently naps due to effects of pain medications and disrupted sleep.  She further reported that Caine had no difficulties getting along with others or dealing with changes in routines, and he is very calm in stressful situations.  She stated that Caine is unable to lift above the chest level or below waist level; and he can stand for 10 to 15 minutes at a time and walk for 30 to 60 minutes at a time.  She reported that Caine's pain and pain medications interfere with his coherence and ability to engage in conversations.  Tr. 143-55.

The ALJ found that Ms. Higdon's report of behaviors and functional limitations was credible to the extent that she accurately reported what she observed and what she had been told. The ALJ further found that Ms. Higdon has a measurable interest in disability status for Caine and is part of the disabled lifestyle that Caine has adopted.  The ALJ found that Ms. Higdon described activities inconsistent with Caine's allegations and indicative of a functional level that does not preclude employment.  The ALJ found Ms. Higdon's statement not reliable to the extent it was inconsistent with the objective findings and did not give it significant weight.  Tr. 21.

The ALJ gave inadequate reasons for discounting Ms. Higdon's testimony.  The ALJ rejected Ms. Higdon's testimony as inconsistent with the objective findings, but did not specify what findings it was inconsistent with.[7]  The ALJ also failed to specify which of the activities Ms. Higdon described were inconsistent with Caine's allegations or were indicative of a higher functional level.  Although these may be germane reasons for giving Ms. Higdon's testimony less

---

[7] Caine argues that the ALJ improperly relied on this reason for rejecting Ms. Higdon's testimony. It may be improper for an ALJ to reject lay witness evidence as unsupported by objective evidence.  *Bruce v. Astrue*, 557 F.3d 1113, 1116.  But an ALJ may properly reject lay witness evidence that conflicts with objective evidence.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

REPORT AND RECOMMENDATION – 15

weight, they are not specific enough to permit this Court to adequately review them.

The ALJ also erred in relying on the fact that Ms. Higdon, as Caine's spouse, had an interest in his disability status. Evidence that a spouse exaggerated a claimant's symptoms in order to obtain disability benefits may be a reason to reject that spouse's testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). But without such evidence, this is a generalized statement about all spouses or family members, and not a reason specific to an individual witness. *Id.* Here, the ALJ pointed to no specific evidence that Ms. Higdon exaggerated Caine's symptoms in order to obtain disability benefits.

On remand, the ALJ should reevaluate the weight to give to Ms. Higdon's statement.

2.     *Caine's credibility*

Caine argues that the ALJ erred in evaluating his credibility. Dkt. 17 at 16. If the claimant's medically determinable impairments could reasonably be expected to produce the claimant's alleged symptoms, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity for work. *See* 20 C.F.R. § 404.1529. If there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). The ALJ may consider "ordinary techniques of credibility evaluation" including the claimant's reputation for truthfulness, inconsistencies in his testimony or between his testimony and conduct, daily activities, work record, and testimony from physicians and others concerning the nature, severity, and effect of the symptoms of which claimant complains. *Id.* at 1284.

Caine testified that injections have provided him only transient pain relief and that he experiences significant physical symptoms even when he engages in activities that take his mind

off the pain.  Tr. 530-32.  He described the symptoms causing medical sources to believe that he

has Asperger's syndrome and how he trained himself not to exhibit some of these symptoms.  Tr.

533-34.  He testified that he was laid off from his last job as his shoulder problems were

increasing.  Tr. 539-40.  He believed that his past jobs would be difficult for him because he can

stand for only 45 minutes at a time, noises in the background make him nervous, and his shoulder

impairment causes more limitations.  Tr. 541-42.

The ALJ found that Caine's description and explanation of his impairments and limitations

was not fully consistent with the objective records and his testimony lacked credibility.  Tr. 21.

The ALJ found that, while Caine's medically determinable impairments could reasonably be

expected to produce some of the alleged symptoms, Caine's statements concerning the intensity,

persistence, and limited effects of these symptoms, as well as some of Caine's behavior, were not

credible to the extent they were inconsistent with the ALJ's residual functional capacity

assessment.  Tr. 22.  The ALJ extensively discussed the reports of Caine's treating physicians

documenting excessive pain behavior and minimal objective findings, many of which are

discussed above.  Tr. 22-26.

Although lack of objective medical evidence cannot be the sole reason an ALJ discounts

subjective complaints, it is a relevant factor that the ALJ can consider in his credibility analysis.

*Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The ALJ did not err in considering the

reports of Caine's treating doctors regarding his pain complaints as compared to the objective

medical findings.  This was a clear and convincing reason, supported by substantial evidence, for

finding Caine not fully credible.

The ALJ also noted that Dr. Cassius attempted to direct Caine toward employment on

several occasions, even as recently as 2008.  Tr. 28.  In October 2007, Dr. Cassius reported that he

REPORT AND RECOMMENDATION – 17

discussed with possibility of Caine going back to work and Caine stated that he would like to work but felt that his pain was too unpredictable and severe.  Tr. 431.  In January 2008, Dr. Cassius reported that he and Caine had a long discussion about looking into types of employment that Caine may feel comfortable with, and Dr. Cassius thought Caine may want to discuss his options with the medical center's vocational rehabilitation program.  Tr. 430.  The ALJ found that this indicated that Dr. Cassius believes Caine is medically capable of working.  Tr. 28.

The ALJ may consider a treating physician's observations in evaluating a claimant's credibility.  *Smolen*, 80 F.3d at 1284.  Caine points out that Dr. Cassius's reports do not indicate that he believed Caine was able to engage in full-time competitive work.  Dkt. 17 at 17.  But Dr. Cassius's willingness to engage Caine in discussions about returning to work show that Dr. Cassius believe Caine was capable of working in at least some capacity.  The ALJ did not err in considering this as a factor in her credibility evaluation.

The ALJ further found that Caine was able to attend to the activities that were important to him, was able to maintain relationships, and cared for his son at least part time.  Tr. 28.  The ALJ found that Caine's daily activities, including playing video games for 9 hours a day or surfing the Internet all day, exhibit physical endurance and cognitive alertness greater than he alleged.  Tr. 28.

Daily activities that are inconsistent with a claimant's alleged symptoms are a relevant credibility consideration.  *Rollins v. Massanari*, 261 F3d 853, 857 (9th Cir. 2001).  But daily activities that do not contradict a claimant's other testimony or meet the threshold for transferrable work skills cannot form the basis of an adverse credibility determination.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  The ALJ may not penalize a claimant for attempting to live a normal life in the face of his limitations.  *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).

Caine alleged that his symptoms prevented him from standing, walking, or otherwise

REPORT AND RECOMMENDATION – 18

keeping his arm in an unsupported position for extended periods of time.  The fact that he spent

most of his day seated at the computer with his arm supported does not contradict this allegation.

In addition, it is unclear how his daily activities would be transferrable to a work setting.

Moreover, the ALJ did not specify how Caine's ability to maintain relationships and care for his

son were anything more than Caine's attempt to lead a normal life in the face of his limitations.

Caine's daily activities were not a clear and convincing reason for finding Caine not disabled.

Although the ALJ did not err in considering the lack of objective medical evidence and Dr.

Cassius's discussions with Caine about returning to work, the ALJ erred in finding that Caine's

daily activities undermined his credibility.  On remand, the ALJ should reevaluate Caine's

credibility in light of this Court's decision, any changes in her findings at the earlier steps, and any

additional evidence submitted by Caine.

### 3.    Medical opinion evidence

Caine argues that the ALJ erred in rejecting the medical opinions of Dr. Friedman, Michael

Soung, M.D., and Evan Cantini, M.D.

In general, more weight should be given to the opinion of a treating physician than to a

non-treating physician, and more weight to the opinion of an examining physician than to a non-

examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted

by another physician, a treating or examining physician's opinion may be rejected only for "clear

and convincing reasons."  *Id.* at 830-31.  Where contradicted, a treating or examining physician's

opinion may not be rejected without "specific and legitimate reasons" that are supported by

substantial evidence in the record.  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502

(9th Cir. 1983)).  An ALJ does this by setting out a detailed and thorough summary of the facts and

conflicting evidence, stating her interpretation of the facts and evidence, and making findings.

REPORT AND RECOMMENDATION – 19

1    *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ must do more than offer her

2    conclusions; she must also explain why her interpretation, rather than the treating doctor's

3    interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v.*

4    *Bowen*, 849 f.2d 418, 421-22 (9th Cir. 1988).

5                   a.      *Dr. Friedman*

6           Dr. Friedman opined in a September 2007 letter to Caine's counsel that Caine's primary

7    complaint is of very severe right shoulder pain.  Dr. Freidman stated that Caine has a small labral

8    tear, but the main issue is his inability to deal with this discomfort without extreme distraction.  Dr.

9    Friedman opined that Caine likely has some form of autistic spectrum disorder, such as Asperger's

10   syndrome.  He believed that the combination of personality factors and chronic pain, taken

11   together, are the reasons for Caine's disability.  Tr. 473.

12          The ALJ found that Dr. Friedman's opinion was not controlling.  The ALJ noted that Dr.

13   Freidman, who is a specialist in physical medicine and rehabilitation, discussed Caine's autistic

14   symptoms before the treatment team's psychologist, Dr. Rhoads, or any other specialist, had

15   evaluated Caine.  This was not a specific and legitimate reason to reject Dr. Friedman's opinion.

16   Although the opinion of a specialist in his or her area of specialty may be entitled to more weight,

17   20 C.F.R. § 404.1527(d)(5), lack of specialization is not a reason to reject a treating doctor's

18   opinion.  A treating physician's opinion may not be discredited on the ground that he is not a

19   board-certified psychiatrist.  *See Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995).

20          The ALJ also found that Dr. Friedman opined that it was Caine's reaction to his perceived

21   pain, which Dr. Friedman described as "discomfort," that was disabling.  The ALJ stated that

22   "discomfort will not be the basis for severe limitations."  Tr. 27-28.  Dr. Friedman used the phrase

23   "this discomfort" to refer to Caine's "primary complaint . . . of very severe right shoulder pain."

REPORT AND RECOMMENDATION – 20

Dr. Friedman also concluded that Caine's personality factors and "chronic pain" are the reasons for his disability. The ALJ's finding that Dr. Friedman believed that Caine suffered from mere discomfort is not a rational interpretation of Dr. Friedman's opinion. This was not a specific and legitimate reason to discount Dr. Friedman's opinion.

The ALJ also found that Dr. Friedman used the term "disability" without explaining his use of this term for a conclusion that is reserved for the Commissioner. An opinion on an issue reserved to the Commissioner, including an opinion that a claimant is "disabled," is not a "medical opinion" and is not entitled to any special weight. 20 C.F.R. § 404.1527(e). Caine contends that the ALJ should have recontacted Dr. Friedman for further clarification on his use of this term. Dkt. 17 at 19-20. But such clarification would not have changed the nature of the opinion or required the ALJ to give it any special weight. Although the ALJ need not contact Dr. Friedman to obtain an updated opinion, the ALJ should reevaluate the weight to give to Dr. Friedman's opinion on remand. [8]

### b.   *Dr. Soung*

Dr. Soung's note from January 2007 stated that that Dr. Friedman followed Caine for chronic right shoulder pain, but Dr. Soung had agreed to fill out a state agency disability form for Caine. Dr. Soung stated that he had reviewed Caine's treatment notes from the past few years and that Caine reported unbearable pain with lifting more than 2 pounds and with any action that involves poor shoulder support. Dr. Soung opined that, based on Caine's present level of functionality, it would be difficult for him to find an appropriate job. Tr. 464.

---

[8] Dr. Friedman also stated in his treatment notes from October 2007 that, at that point, Caine was not capable of working "primarily for I think psychiatric reasons and associated with the probable diagnosis of Asperger's syndrome. He also has right shoulder pain." Tr. 470. Caine notes that the ALJ did not reference this opinion. Dkr. 17 at 18. The ALJ is not required to discuss each and every treatment note. Moreover, this opinion is essentially the same as Dr. Friedman's September 2007 opinion. There was no error in the ALJ's failure to discuss this particular statement.

REPORT AND RECOMMENDATION – 21

1    The ALJ found that Dr. Soung's opinion was not controlling.  The ALJ first found that Dr.

2    Soung was not a treating physician.  Tr. 27.  The record shows that Caine called the clinic on

3    January 2 stating that he needed the form completed by January 15.  Tr. 468.  It appears that Dr.

4    Friedman was not available in that short time frame, so Dr. Soung agreed to see Caine to complete

5    the paperwork.  There is no indication in the record that Dr. Soung saw Caine on any other

6    occasion.  This was a rational interpretation of the evidence that this Court will uphold.

7        The ALJ further found that Dr. Soung's opinion was unsupported by objective findings in

8    the treatment record, contradicted by the assessments of numerous other sources, and based only

9    on Caine's reports.  Tr. 27.  Although Dr. Soung is not a treating physician, he is an examining

10   physician, and the ALJ must still give specific and legitimate reasons, supported by substantial

11   evidence, for rejecting his opinion.  *See Lester*, 81 F.3d at 830.  This the ALJ failed to do.

12   Although these may be legitimate reasons to reject Dr. Soung's opinion, the ALJ did not explain

13   what evidence contradicted Dr. Soung's opinion or why her interpretation, rather than Dr. Soung's,

14   is correct.  The ALJ should reevaluate the weight to give to Dr. Soung's opinion on remand.

15            c.    *Dr. Cantini*

16       Dr. Cantini evaluated Caine for the state vocational rehabilitation program in April 2008.

17   He reported that the results of the neurologic exam were normal and the results of the

18   musculoskeletal exam were largely normal with the exception of Caine's pain complaints in excess

19   of findings.  Tr. 482-83.  Dr. Cantini stated that it would be difficult to make recommendations on

20   work limitations that would be unlikely to change over time because of the functional nature of

21   Caine's complaints and the "likelihood that things that are acceptable to him now would become

22   unacceptable in the future."  Tr. 483.  With that in mind, Dr. Cantini stated that he would limit

23   reaching with the right arm, limit lifting to 10 pounds occasionally and 5 pounds frequently, and

REPORT AND RECOMMENDATION – 22

1  limit work above shoulder height.  *Id.*

2      The ALJ found that Dr. Cantini's assessment was credible, but the reasoning for the

3  reduction to the sedentary level of exertion was not objectively founded.  The ALJ may reject a

4  physician's opinion that is not supported by objective evidence.  *See Meanel v. Apfel*, 172 F.3d

5  1111, 1113-14 (9th Cir. 1999).  Here, Dr. Cantini's own statement revealed that his objective

6  findings were not the basis for his opinion.  Dr. Cantini also qualified the certainty of his own

7  opinion.  The ALJ did not err by failing to adopt Dr. Cantini's opinion as to Caine's lifting

8  capacity.[9]  The ALJ need not reevaluate the weight to give to Dr. Cantini's opinion on remand.

9          *6.      Dr. Goodman's report*

10      Plaintiff argues that the ALJ should be directed on remand to resolve inconsistencies in the

11  report of Steven Goodman, M.D.  Dkt. 17 at 23.

12      In his narrative report, Dr. Goodman stated:  "There are manipulative limitations including

13  occasional reaching with the right upper extremity due to complaints of right shoulder pain.  There

14  are no limitations on the right upper extremity with respect to handling, feeling, grasping or

15  fingering.  There are no limitations on the left upper extremity."  Tr. 447.  In a check-box form

16  attached to his report, Dr. Goodman indicated that with his right hand, Caine could reach overhead

17  occasionally; perform all other reaching frequently; handle, finger, and feel continuously; and push

18  and pull occasionally.  Tr. 450.

19      The ALJ summarized Dr. Goodman's opinion as finding that "with the right upper

20  extremity reaching is limited to occasional due to right shoulder pain complaints; but there are no

21  limitations on right upper extremity handling, feeling, grasping, or fingering."  Tr. 25.  The ALJ

22  found that Caine had the residual functional capacity to reach overhead with the right arm

23  ───────────────
[9] Consistent with Dr. Cantini's opinion, the ALJ limited Caine to only ocassional overhead
reaching with his right arm.  Tr. 20.

REPORT AND RECOMMENDATION – 23

occasionally; reach to the front and side frequently; and handle, feel, push, and pull continuously; with no limitation on the use of the right and left arms together.  Tr. 20.

Dr. Goodman's narrative opinion indicates only that Caine's limitations "include" occasional reaching with the right arm.  His check-box opinion, which is more specific, indicates that Caine can occasionally reach overhead and frequently do all other reaching.  The ALJ's residual functional capacity finding matches Dr. Goodman's check-box opinion.  If there is any discrepancy between Dr. Goodman's narrative statement and his check-box assessment, the ALJ relied on the more detailed opinion of the two.  The Court declines to direct the ALJ to reassess Dr. Goodman's opinion on remand.

## V.  CONCLUSION

For the foregoing reasons, the Court recommends that this case be **REVERSED** and **REMANDED** for further administrative proceedings.  On remand, the ALJ should consider whether it is appropriate to further clarify the nature of Caine's medically determinable severe impairments.  The ALJ should also obtain and consider an updated medical opinion regarding whether Caine's severe impairments, alone or in combination, meet or equal a listed impairment. And the ALJ should redetermine Caine's residual functional capacity, including reevaluation of the lay witness evidence of Ms. Higdon, Caine's subjective complaints, the medical opinions of Dr. Freidman and Dr. Soung, and any updated evidence.

A proposed order accompanies this Report and Recommendation.

DATED this 14th day of April, 2010.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION – 24